**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| AMY CUCCIO | : | CIVIL ACTION |
| 24 Michael Avenue | : | |
| Milltown, NJ 08850 | : | |
| Plaintiff, | : | NO. 1:19-cv-16988 |
| -vs- | : | |
| | : | |
| THE HOME DEPOT USA, INC. | : | PLAINTIFF REQUESTS |
| *individually and d/b/a* | : | TRIAL BY JURY |
| HOME DEPOT | : | |
| 1990 Route 9 | : | |
| Howell, NJ 07731 | : | |
| and | : | |
| HOME DEPOT SERVICES, LLC | : | |
| *individually and d/b/a* | : | |
| HOME DEPOT | : | |
| 1990 Route 9 | : | |
| Howell, NJ 07731 | : | |
| THE HOME DEPOT, INC. | : | |
| *individually and d/b/a* | : | |
| HOME DEPOT | : | |
| 1990 Route 9 | : | |
| Howell, NJ 07731 | : | |
| and | : | |
| KIM VIGNOLA (*individually*) | : | |
| Defendants. | : | |

Plaintiff, Amy Cuccio, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, The Home Depot USA, Inc. *individually and d/b/a* Home Depot, Home Depot Services, LLC *individually and d/b/a* Home Depot, The Home Depot, Inc. *individually and d/b/a* Home Depot, and Kim Vignola (individually) (collectively "Defendants") and upon information and belief avers the following:

## PARTIES

1.      Plaintiff, Amy Cuccio ("Plaintiff" or "Ms. Cuccio") is an adult individual who resides in the State of New Jersey with an address for the purposes of service at 24 Michael Avenue, Milltown, New Jersey 08850.

2.      Defendant, The Home Depot USA, Inc. *individually and d/b/a* Home Depot is a business organization existing under the laws of the State of New Jersey with an address for the purposes of service 1990 Route 9, Howell, New Jersey 07731.

3.      Defendant, Home Depot Services, LLC is a business organization existing under the laws of the State of New Jersey with an address for the purposes of service 1990 Route 9, Howell, New Jersey 07731.

4.      Defendant, The Home Depot, Inc., is a business organization existing under the laws of the State of New Jersey with an address for the purposes of service 1990 Route 9, Howell, New Jersey 07731.

5.      Defendant, Kim Vignola is an adult individual who resides in the State of New Jersey with a business address for the purpose of service at 1990 Route 9, Howell, New Jersey 07731.

6.      At all times relevant to this Civil Action, Defendant, Kim Vignola was an employee of Defendants, The Home Depot USA, Inc. *individually and d/b/a* Home Depot, Home Depot Services, LLC *individually and d/b/a* Home Depot, The Home Depot, Inc. *individually and d/b/a* Home Depot, and held supervisory authority over Plaintiff, Amy Cuccio during Plaintiff's employment for Defendants.

2

7.      Defendants, The Home Depot USA, Inc. *individually and d/b/a* Home Depot, Home Depot Services, LLC *individually and d/b/a* Home Depot, The Home Depot, Inc. *individually and d/b/a* Home Depot was Plaintiff's joint and sole employer.

## NATURE OF THE CASE

8.      Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq.* ("ADA"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"); the Family and Medical Leave Act of 1993, 29 U.S.C § 2611, *et seq.* ("FMLA"); the New Jersey Law Against Discrimination ("NJLAD"), and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, hostile work environment, and retaliation for reporting and opposing said discrimination and harassment in the workplace which led to Plaintiff's unlawful termination from her employment with Defendants.

## JURISDICTION AND VENUE

9.      This action involves a Question of Federal Law under the Americans with Disabilities Act ("ADA"), the Age Discrimination and Employment Act ("ADEA"), and the Family and Medical Leave Act ("FMLA").

10.     The honorable Court has supplemental jurisdiction over the State Law Cause of Action.

11.     Venue is proper in the District of New Jersey as Plaintiff was employed by Defendants and worked in the County of Monmouth, New Jersey where the discrimination, harassment, hostile work environment, and retaliation complained of occurred.

12.     On or around December 18, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.   Plaintiff's Charge of Discrimination was dual filed with the New Jersey Division on Civil Rights.

13.     On or about May 22, 2019, the EEOC issued to Plaintiff a Dismissal and Notice of Rights.

14.     This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights which is dated May 22, 2019.

## MATERIAL FACTS

15.     Plaintiff, Amy Cuccio began her employment for Defendants twenty-three (23) years ago in 1995.

16.     Plaintiff, Amy Cuccio worked in the corporate office for Defendants for approximately twenty (20) years.   Plaintiff, Amy Cuccio began in data entry and worked hard to moved up through the ranks until Plaintiff, Amy Cuccio was the Executive Assistant for the Regional Vice President.

17.     During her employment for Defendants, Plaintiff, Amy Cuccio performed duties including opening Villagers Hardware and Closing Villagers Hardware.

18.     Plaintiff, Amy Cuccio also assisted with Expo which was Home Depot's high-end stores.   Ms. Cuccio was also involved with closing the Expo Stores.

19.     Plaintiff, Amy Cuccio spent time in Merchandising Administration where she worked with merchants who placed orders for products carried in Home Depot stores and Venders who supplied the merchandise sold at Home Depot Stores.

20.     Plaintiff, Amy Cuccio also was a Human Resources Administrator for over one (1) year.  Ms. Cuccio returned to Regional Merchandising Administration before Ms. Cuccio settled as the Executive Assistant to the Regional Vice President in 2012.

21.     Sometime around 2012, Plaintiff, Amy Cuccio became the Executive Assistant to the Regional Vice President, Scott Murry.

22.     Sometime around 2014 Scott Murry left the position and Ro Rodriguez became the Regional Vice President of New Jersey Metro.

23.     Instead of allowing Plaintiff, Amy Cuccio to remain in the position of Executive Assistant to the new Regional Vice President, a position Plaintiff Amy Cuccio had excelled in for several years, Ms. Cuccio was informed she had to interview for the position in order to remain in the position.

24.     Defendants refused to explain to Plaintiff, Amy Cuccio why she was forced to interview for a position she held for the previous three (3) years, however, Plaintiff, Amy Cuccio complained and interviewed for her own position.

25.     Plaintiff, Amy Cuccio was evaluated as the second place candidate behind Cheryl Vietri, according to Regional Human Resources Manager, Robert Silk.

26.     Cheryl Vietri accepted the position and Plaintiff, Amy Cuccio was left without a position.

27.     After approximately one (1) week, Plaintiff, Amy Cuccio was offered a position as an Assistant Store Manager.

28.     Plaintiff, Amy Cuccio was offered the position of Assistant Store Manager assigned to the Bridgewater, New Jersey store.

29.     Around the same time that Plaintiff, Amy Cuccio was offered the position of Assistant Store Manager of the Bridgewater Store, Cheryl Vietri stepped down from the position of Executive Assistant to the Regional Vice President.

30.     Upon information and belief the position held too much responsibility for Cheryl Vietri and therefore, Cheryl Vietri requested a reassignment to her previous role at Home Depot.

31.     Plaintiff, Amy Cuccio was the second-place applicant for the position of Executive Assistant to the Regional Vice President, who at that time was Ro Rodriguez. Moreover, Plaintiff, Amy Cuccio had held and excelled in the position of Executive Assistant to the Regional Vice President for the past two to three years .

32.     Notwithstanding Plaintiff, Amy Cuccio's tenure, experience, and job history, Defendants refused to offer Ms. Cuccio the position of Executive Assistant to the Regional Vice President.

33.     Defendants refused to consider that Plaintiff, Amy Cuccio interviewed for the position and was the second place candidate.

34.     Defendants refused to consider that Plaintiff, Amy Cuccio held the position of Executive Assistant to the Regional Vice President from 2012 through 2014.

35.     Plaintiff, Amy Cuccio was therefore forced to transition to a new role as the Assistant Store Manager at the Bridgewater, New Jersey store.

36.     Prior to assuming full responsibilities as the Assistant Store Manager at the Bridgewater Store, Plaintiff, Amy Cuccio participated in a process called assimilation.

37.     Assimilation is a training period which Plaintiff Amy Cuccio participated in to assist with the transition to a new and entirely different role with Defendants.

38.    Despite Plaintiff, Amy Cuccio's extensive experience with Home Depot, Plaintiff had always worked in the corporate offices for Defendants.   Plaintiff had not worked in a store location until 2014 when Plaintiff transitioned to a position as an Assistant Store Manager at the Bridgewater Store.

39.    From September 2014 until March 2015, Plaintiff, Amy Cuccio trained and learned the position of Assistant Store Manager.

40.    In March 2015, Plaintiff, Amy Cuccio was reassigned to Store Number 0933, also known at the Howell, New Jersey Store.

41.    When Plaintiff, Amy Cuccio was reassigned to Store Number 0933, Defendant, Kim Vignola became Plaintiff, Amy Cuccio's direct supervisor.

42.    Defendant, Kim Vignola was the Store Manager of Store 0933, also known at the Howell, New Jersey Store.

43.    When Plaintiff, Amy Cuccio worked in the corporate offices for Home Depot, her schedule required Ms. Cuccio to work Monday through Friday from approximately 8:00 A.M. until 5:00 P.M.

44.    Plaintiff, Amy Cuccio's hours changed drastically upon transitioning to the new position as Assistant Store Manager.

45.    The two jobs were very different.   Plaintiff, Amy Cuccio went from working as an Executive Assistant to the Regional Vice President to playing an integral role in running a retail Home Depot store.

46.    At all times material to this Charge, Defendant, Kim Vignola harassed Plaintiff, Amy Cuccio because of Ms. Cuccio's age.

47.     Defendant, Kim Vignola was outspoken in her discrimination and harassment of Plaintiff, Amy Cuccio due to Plaintiff's age.

48.     Defendant, Kim Vignola made statements such as, "at your age, I don't think I would recommend that someone get into retail."

49.     Defendant Kim Vignola subjected Plaintiff, Amy Cuccio to discrimination and harassment through severe and pervasive discrimination and harassment in the workplace. Defendant, Kim Vignola made comments such as "retail is tough for someone who is fifty (50) years old.

50.     Defendant, Kim Vignola subjected Plaintiff, Amy Cuccio to age-based insults when addressing Plaintiff, Amy Cuccio by telling Ms. Cuccio to "stop blubbering."

51.     After Plaintiff, Amy Cuccio gave a presentation, Defendant, Kim Vignola informed Plaintiff, Amy Cuccio, "you were blubbering at the presentation."

52.     Blubbering was used as an age based insult to embarrass and ridicule Plaintiff, Amy Cuccio.

53.     Defendant Kim Vignola's comments and conduct evidenced Defendant, Kim Vignola's age-based animus for Plaintiff, Amy Cuccio.

54.     Defendant, Kim Vignola stated, "I would never recommend someone who is fifty (50) go into retail."

55.     Defendant, Kim Vignola constantly harassed Plaintiff, Amy Cuccio.   Defendant, Kim Vignola followed Plaintiff, Amy Cuccio throughout the store and insulted Plaintiff, Amy Cuccio, and otherwise bullied and abused Plaintiff, Amy Cuccio.

56.     Defendant, Kim Vignola did not harass or otherwise treat Plaintiff, Amy Cuccio's similarly situated younger employees in the same discriminatory manner in which Defendant, Kim Vignola treated Plaintiff, Amy Cuccio.

57.     Due to Plaintiff, Amy Cuccio's experience, and time with the company, Plaintiff Amy Cuccio earned a compensation package that made her one of the highest paid Assistant Store Managers in the district.

58.     Plaintiff, Amy Cuccio earned almost as much money as Defendant, Kim Vignola.

59.     Defendant, Kim Vignola's comments and conduct indicated Defendant, Kim Vignola believed Plaintiff, Amy Cuccio was overpaid.

60.     Defendant, Kim Vignola made disparaging comments about Plaintiff, Amy Cuccio's compensation package on a regular basis.

61.     Defendant, Kim Vignola's discrimination and harassment was severe and pervasive and created a hostile work environment for Plaintiff, Amy Cuccio.

62.     Defendant, Kim Vignola worked to deprive Plaintiff, Amy Cuccio of bonuses and benefits that Ms. Cuccio earned.

63.     Defendant, Kim Vignola discriminated and harassed Ms. Cuccio on a daily basis.

64.     Defendant, Kim Vignola executed a strategy to deprive Plaintiff, Amy Cuccio of a salary increase for the year 2017.

65.     Plaintiff Amy Cuccio only received a one (1) percent increase in her salary in 2018.   This is the smallest salary increase allowed by Defendants.   This was caused by Defendant, Kim Vignola's discriminatory Animus and the discrimination and harassment to which Defendant, Kim Vignola subjected Plaintiff, Amy Cuccio during Plaintiff's employment for Defendants.

66.     Defendant, Kim Vignola screamed at Plaintiff, Amy Cuccio and embarrassed and ridiculed Plaintiff in front of Plaintiff's coworkers.

67.     Defendant, Kim Vignola did not yell or scream at Plaintiff's similarly situated male employees under the age of forty.

68.     Defendant Kim Vignola constantly ordered Plaintiff, Amy Cuccio into her office and proceeded to berate Ms. Cuccio.

69.     Defendant, Kim Vignola was require Plaintiff, Amy Cuccio to sit in her office for long extended period of time while Defendant, Kim Vignola was harass and berate Plaintiff, Amy Cuccio.   Defendant, Kim Vignola went on long ranting diatribes insulting and ridiculing Plaintiff, Amy Cuccio.

70.     Plaintiff, Amy Cuccio's co-workers noticed Defendant, Kim Vignola's daily harassment and abuse to which Defendant, Kim Vignola subjected Plaintiff, Amy Cuccio during Plaintiff's employment for Defendants.

71.     Accordingly, Ms. Cuccio's co-workers supported Plaintiff, Amy Cuccio by with comments such as "keep your head up Amy" and "don't let her get you down."

72.     While it was nice to have their support, these comments were highly embarrassing to Plaintiff, Amy Cuccio as they indicated Defendant, Kim Vignola's discrimination, harassment and age-based animus.

73.     Defendant, Kim Vignola spent so much time harassing and bullying Plaintiff, Amy Cuccio that there were days when Plaintiff, Amy Cuccio spent more time in Defendant, Kim Vignola's subjected to ridicule and criticism then Plaintiff, Amy Cuccio spent on the floor performing her job duties.

74.     Defendant, Kim Vignola would not allow Plaintiff, Amy Cuccio to simply perform her job.   Defendant, Amy Cuccio ordered Plaintiff into her office and held Plaintiff there during Plaintiff scheduled working hours.

75.     Defendant, Kim Vignola criticized, condescended, and verbally abused Plaintiff Amy Cuccio despite Ms. Cuccio's continued success at the Specialty Assistant Store Manager.

76.     Defendant, Kim Vignola labeled this treatment as "ripping the band aid off." Defendant, Kim Vignola made comments such as, "I got to just rip off the band aid."

77.     Whenever Defendant, Kim Vignola would "rip off the band-aid," Defendant, Kim Vignola would subject Plaintiff, Amy Cuccio to severe and pervasive discrimination and harassment based upon her age.

78.     Despite Defendant, Kim Vignola's daily discrimination and harassment targeting Plaintiff, Amy Cuccio, Ms. Cuccio excelled.   In fact, Ms. Cuccio brought her sales numbers up until she was number one in the District.

79.     There are eleven (11) Home Depot Retail stores in Plaintiff, Amy Cuccio's District.

80.     The District where Plaintiff, Amy Cuccio was assigned to work is called District 105 in the Home Depot metrics.

81.     At the time of Plaintiff, Amy Cuccio's unlawful termination, Amy Cuccio was number one (1) for the metrics which measured Special Assistant Store Managers' performance.

82.     Plaintiff, Amy Cuccio increased her metrics until she was the number-one Special Assistant Store Manager in the District.

83.     The stated reason for Plaintiff, Amy Cuccio's termination is nothing more than a pretext to hide and mask Defendants discriminatory termination which was based upon Defendants' age-based animus.

84.     Defendants claim to have terminated Plaintiff, Amy Cuccio for failing to file a claim in a timely fashion.   By no means was this a terminable offense.

85.     Defendants have never terminated a Specialty Assistant Store Manager for filing a late claim.   Plaintiff, Amy Cuccio was the first Specialty Store Manager who was filed for filing a late claim.

86.     There are at least two other Assistant Store Managers who filed late claims. These were Plaintiff's similarly situated coworkers who were younger than Plaintiff.

87.     None of Plaintiff's younger similarly situated coworkers were discharged or otherwise disciplined for filing a late claim.

88.     Plaintiff's similarly situated younger coworkers were males in their thirties.

89.     Plaintiff's similarly situated younger coworkers were promoted or otherwise received increases in salary, and/or bonuses pursuant to filing late claims.

90.     Plaintiff, Amy Cuccio, a female in her fifties (50s) was terminated for the same issue.

91.     Based upon Defendant, Kim Vignola's age-based comments, that someone in their fifties could not perform the job duties of an Assistant Store Manager, Plaintiff, Amy Cuccio attempted to identify a solution.

92.     Plaintiff, Amy Cuccio visited Home Depot's webpage at CareerBuilder.com and noticed two job postings for hourly positions in the corporate office.

93.     Plaintiff, Amy Cuccio began experiencing back problems in 2016.

94.   Plaintiff, Amy Cuccio visited a neurosurgeon who recommended surgery and Plaintiff underwent a lumbar spinal fusion in April 2018.

95.   Plaintiff, Amy Cuccio submitted paperwork for FMLA leave as Ms. Cuccio's surgery was scheduled for April 10, 2018.

96.   Plaintiff, Amy Cuccio's FMLA leave was approved and Plaintiff, Amy Cuccio utilized ten weeks of FMLA time.

97.   Plaintiff, Amy Cuccio notified Defendant, Kim Vignola that Plaintiff, Amy Cuccio had surgery scheduled for April 10, 2018.

98.   Defendant, Kim Vignola expressed and/or displayed her disapproved of Plaintiff, Amy Cuccio's request for FMLA leave.

99.   Upon return, Defendant Kim Vignola harassed and retaliated against Plaintiff, Amy Cuccio related to Plaintiff's FMLA leave.

100.   Defendant, Kim Vignola stated numerous times, "I can't believe that you only gave me a week's notice before you took time off."

101.   Defendant, Kim Vignola took time off twice and provided less notice than Plaintiff, Amy Cuccio.

102.   Defendant, Kim Vignola's comments and conduct subjected Plaintiff to discrimination and harassment based upon Plaintiff's age and retaliation for Plaintiff lawful use of the FMLA.

103.   Immediately upon Plaintiff, Amy Cuccio's return from FMLA leave, Defendant, Kim Vignola provided Plaintiff, Amy Cuccio a disciplinary measure called a counseling.

104.    The counseling that Defendant, Kim Vignola provided to Plaintiff, Amy Cuccio upon Plaintiff's return from FMLA leave was witnessed by another Store Manager, Alison Tucci.

105.    A counseling is a serious disciplinary measure as it changes the status of the employee who is counseled.   Accordingly, when Defendant, Kim Vignola counseled Plaintiff, Amy Cuccio upon Plaintiff's return from her FMLA leave, Defendant, Kim Vignola harassed and retaliated against Plaintiff by providing Plaintiff with a counseling.

106.    Once a Home Depot employee is provided with a counseling, termination is eminent.   This was Defendant, Kim Vignola's intend and the reason that Defendant, Kim Vignola issued the counseling.

107.    Defendant, Kim Vignola's stated reason for the counseling was pretext.

108.    Defendant, Kim Vignola counseled Plaintiff as discrimination and harassment and in retaliation for Plaintiff's lawful use of the FMLA.

109.    The counseling reason that Defendant, Kim Vignola provided to Plaintiff was "lack of knowledge."

110.    The timing of this counseling indicated discrimination and retaliation as it occurred within days of Plaintiff, Amy Cuccio's return from a ten-week FMLA leave.

111.    Defendant, Kim Vignola's accusations and the counseling was not warranted as Plaintiff, Amy Cuccio's sales numbers and performance metrics were steadily improving at the time of the counseling.

112.    In and around the time that Plaintiff, Amy Cuccio received the counseling, Plaintiff, Amy Cuccio was the number two Specialty Store Manager in the District.

113.    At the time of Plaintiff, Amy Cuccio's unlawful termination, she was the number one Specialty Store Manager in the District.

114.    As Plaintiff, Amy Cuccio was employed for approximately twenty (20) years in the corporate office, Ms. Cuccio believed that a reassignment to the corporate office might offer an acceptable solution and help Plaintiff avoid any further discrimination, harassment and retaliation from Defendant, Kim Vignola.

115.    Plaintiff, Amy Cuccio exercised self help in an effort to find a solution whereby Plaintiff could continue her twenty (20) year career with Home Depot and still avoid the severe and pervasive discrimination and harassment to which Plaintiff was subjected by Defendant, Kim Vignola.

116.    Transferring to the corporate office may even have required that Plaintiff's wages were reduced.   Still, Plaintiff considered and attempted to locate a job in corporate.

117.    Plaintiff's objective was to continue her twenty (20) year career with Home Depot while finding a solution that would allow Plaintiff to avoid the severe and pervasive discrimination and harassment to which she was subjected by Defendant, Kim Vignola.

118.    Plaintiff, Amy Cuccio tried to obtain approval from the District Human Resources Manager, Jenifer Fuller, for a transition back to the corporate offices.

119.    Jenifer Fuller works closely with Defendant Kim Vignola.

120.    On November 27, 2018, and then again on November 28, 2018, Plaintiff, Amy Cuccio spoke with Jenifer Fuller about applying for a position in the corporate office.

121.    Jenifer Fuller responded to Plaintiff's inquiries about transitioning to the corporate office by stating, "well we can't stop you from applying, and we can't stop them from considering you."

122.    Jenifer Fuller's response, that "we can't stop you from applying" clearly indicated Jenifer Fuller's disapproval.

123.    Defendants including Defendant, Kim Vignola and employee Jenifer Fuller found a way to stop Plaintiff, Amy Cuccio from applying and corporate from considering Plaintiff, Amy Cuccio for a position in the corporate office

124.    Defendants terminated Plaintiff's employment.

125.    The reason for Plaintiff's termination was nothing but pretext.

126.    Plaintiff, Amy Cuccio applied for two positions in Home Depot's corporate office the last week of November 2018.

127.    Plaintiff, Amy Cuccio notified Jenifer Fuller that she applied for both positions, as obtaining the positions required coordination with Plaintiff's current supervisors.

128.    On November 30, 2018, Peter Cancelmo, responding to Plaintiff, Amy Cuccio's applications, and contacted Plaintiff, Amy Cuccio by telephone.

129.    Peter Cancelmo notified Plaintiff, Amy Cuccio that is was considering her for both positions.

130.    Peter Cancelmo scheduled an interview with Plaintiff, Amy Cuccio for December 5, 2018.

131.    Monday, December 3, 2018, Plaintiff, Amy Cuccio arrived at work at her scheduled time.   Upon arrival, Defendant, Kim Vignola would not even look at Plaintiff, Amy Cuccio.

132.    One of Plaintiff, Amy Cuccio's co-workers warned Plaintiff, Amy Cuccio, "Kim Vignola is in rare form today so watch out."

133.   Soon thereafter, Defendant, Kim Vignola found Plaintiff, Amy Cuccio and stated, "do you have a minute?"

134.   Plaintiff, Amy Cuccio followed Defendant, Kim Vignola to Kim Vignola's office.

135.   Upon arriving at Defendant, Kim Vignola's office, Plaintiff, Amy Cuccio noticed that another Store Manager named Alison Tucci was present.   Immediately, Plaintiff, Amy Cuccio realized that Defendant, Kim Vignola was about to terminate Plaintiff, Amy Cuccio's employment because of Plaintiff, Amy Cuccio's age and in retaliation for Plaintiff's lawful use of the FMLA.

136.   The stated reason for Plaintiff, Amy Cuccio's termination was because Plaintiff, Amy Cuccio did not file a claim on time.

137.   Defendant, Kim Vignola stated at the termination meeting, "well, you didn't file the claim on time."

138.   Defendants' stated reason is nothing more than a pretext to hide Defendants' discriminatory animus and real motive for terminating Plaintiff's employment.

139.   Plaintiff, Amy Cuccio said to Defendant, Kim Vignola, "Really! You are going to terminate me today?   You knew that I had applied for another position.   You could not let me step down?   You had to do this today?"

140.   Defendant, Kim Vignola smiled and said, "I am going to need your keys."

141.   Defendant, Kim Vignola celebrated the termination of Plaintiff, Amy Cuccio by skipping through the store, smiling and acting giddy.

142.   Defendants terminated Plaintiff, Amy Cuccio for filing a late claim charge and the store was never even charged for a late claim.   Defendants terminated Plaintiff because of

Plaintiff's age, disability, FMLA leave and retaliation for opposing and reporting the discrimination and harassment in the workplace.

143.     At all times, Defendants discriminated against Plaintiff, Amy Cuccio because of Plaintiff, Amy Cuccio's age, disability and in retaliation for Plaintiff, Amy Cuccio's reports of discrimination and harassment in the workplace.

144.     Defendants maintain a policy for termination of an employee which requires a four-step process: (1) coaching, (2) counseling, (3) final, (4) termination.

145.     Defendant, Kim Vignola made the decision to terminate Plaintiff, Amy Cuccio based on Defendant, Kim Vignola's discriminatory age-based animus.

146.     Defendant, Kim Vignola voiced her discriminatory ideas that Plaintiff, Amy Cuccio's age was an impediment to successfully fulfilling her job requirements.

147.     Accordingly, Defendant, Kim Vignola initiated the process of terminating Plaintiff, Amy Cuccio in February 2018 when Defendant, Kim Vignola provided Plaintiff with a counseling.

148.     The stated reason for the counseling was due to Plaintiff, Amy Cuccio's numbers/ sales metrics.

149.     Plaintiff, Amy Cuccio steadily improved her numbers until she was the number one Specialty Store Manager in the District.

150.     Therefore, Defendant, Kim Vignola had to come up with some other pretext for terminating Plaintiff, Amy Cuccio.

151.     Defendant, Kim Vignola decided to blame Plaintiff's termination of filing a late charge that was never even charged to the store.

152.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

153.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

154.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails.

155.    Plaintiff also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

156.    Plaintiff has further experienced severe emotional and physical distress including physical manifestations of Plaintiff's emotional distress.

157.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

158.    Defendants discrimination and harassment of Plaintiff, Amy Cuccio was severe and pervasive and subjected Plaintiff to a hostile work environment.

159.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

160.    Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's opposition to, reports of and complaints of discrimination, harassment and hostile work environment.

161.    Defendants discriminatory conduct was severe and pervasive, creating a hostile work environment for Plaintiff.

162.    The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

163.    Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

164.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

165.    Plaintiff, Amy Cuccio claims unlawful termination and requests reinstatement.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER
## AMERICANS WITH DISABILITIES ACT
### (Against Corporate Defendants Only)

166.    Plaintiff, Amy Cuccio, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-sixty-five (165) as fully as if they were set forth at length.

167.    Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. – No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

168.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disabilities.

169.    From the time her medical condition began to the day of her termination; Plaintiff was capable of performing the duties and job requirements of her position.

170.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

171.   From the time her medical condition presented to the day of her termination; Plaintiff attempted to engage Defendants in an interactive process to discuss reasonable accommodations.

172.   Defendant terminated Plaintiff because of her disability.

173.   Such adverse employment action by Defendant were in violation of the ADA.

174.   Following Defendant's termination of Plaintiff, Plaintiff was replaced by a non-disabled individual.

175.   As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

176.   Plaintiff also claims unlawful retaliation under the ADA for her opposition to Defendant's unlawful employment practice.

177.   Plaintiff makes claims for all damages available under the ADA.


**SECOND CAUSE OF ACTION**
**RETAILIATION UNDER**
**AMERICANS WITH DISABILITIES ACT**
**(Against Corporate Defendants Only)**

178.   Plaintiff, Amy Cuccio, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-seventy-seven (177) as fully as if they were set forth at length.

179.   SEC. 12203. [Section 503] states, "(a) Retaliation. – No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testifies, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

21

180.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

181.     Defendants retaliated against Plaintiff when Plaintiff opposed Defendants discriminatory animus to which Plaintiff was subjected during her employment.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE AGE
### DISCRIMINATION IN EMPLOYMENT ACT
### (Against Corporate Defendants Only)

182.     Plaintiff, Amy Cuccio, hereby incorporated all allegations contained in paragraphs one (1) through one-hundred-eighty-one (181) as fully as if they were set forth at length.

183.     Section 626 of the ADEA provided it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to their compensation, terms, conditions or privileges of employment, because of such individual's age;

> (2) to limit, segregate, or classify their employees in any way which would deprive or tent to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

> (3) to reduce the wage rate of any employee in order to comply with this chapter.

> (4) It Shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

184.     Defendants engaged in unlawful employment practices prohibited by Section 626 of the ADEA by discriminating against Plaintiff because of her age.

22

185.   Defendants' age based comments and conduct were severe and pervasive and occurred on a daily and/or weekly basis so that Plaintiff could not escape the discrimination and harassment in the workplace.

186.   Accordingly, Plaintiff was subjected to a hostile work environment due to Plaintiff's age.

187.   Defendants' conduct was severe in that Defendants engaged in acts of discrimination and harassment whereby a single act of Defendants' harassment was sufficient to create a hostile work environment.

188.   Defendants' conduct was pervasive in that Defendants continually subjected Plaintiff to abuse, ridicule, insults, criticism, contempt, and scorn, day after day so that Plaintiff was forced to endure age-based discrimination and harassment in the workplace on a daily and/or weekly basis.

**FOURTH CAUSE OF ACTION**
**RETALIATION UNDER THE AGE**
**DISCRIMINATION IN EMPLOYMENT ACT**
**(Against Corporate Defendants Only)**

189.   Plaintiff, Amy Cuccio, hereby incorporates all allegation contained in paragraphs one (1) through one-hundred-eighty-eight (188) as fully as if they were set forth at length.

190.   Section 623 (d) of the ADEA states the following:

> "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or application for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

191.    Defendants violated Section 623 (d) of the ADEA because Defendants discriminated against Plaintiff due to Plaintiff's complaints of Defendants' unlawful employment practices as previously set forth herein.

192.    Plaintiff opposed and/or reported the continual discrimination and harassment in the workplace and Defendants conduct continued and ratcheted up.

193.    Moreover, Plaintiff was subjected to diciplinary measures such as counseling and termination after Plaintiff opposed and/or reported the discrimination and harassment in the workplace.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE FMLA
## <u>INTERFERENCE AND RETALIATION</u>
### <u>(against all Defendants)</u>

194.    Plaintiff, Amy Cuccio, hereby incorporated all allegations contained in paragraphs one (1) through one-hundred-ninety-four (194) as fully as if they were set forth at length.

195.    § 2612 of the FMLA states in pertinent part:

(a) In General

1. Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period of one or more of the following:

a. Because of the birth of son or daughter of the employee and in order to care for such son or daughter.

   b.  Because of the placement of the son or daughter with the employee

        for adoption or foster care.

   c.  In order to care for the spouse, or a son, daughter, or parent, of the

        employee if such spouse, or a son, daughter, or parent has a serious

        health condition.

   d.  Because of a serious health condition that makes the employee

        unable to perform the functions of the position of such employee.

196.    Defendants violated Plaintiff's rights under the FMLA by interfering with

Plaintiff's leave by failing to advise Plaintiff of her rights as afforded by the FMLA.

197.    Defendants, by and through its managers, officials, and employees, by acts or

representations intentionally or through culpable negligence failed to inform Plaintiff of any

rights, privileges, and protections offered through the FMLA.

198.    Defendants violated Plaintiff's rights by failing to provide her with appropriate

leave there under.

199.    § 2615 of the Act states as follows: Prohibited acts

   (a) Interference with rights

        1.  Exercise of rights:

        It shall be unlawful for any employer to interfere with, restrain, or deny

        the exercise of or the attempt to exercise, any right provided under the

        subchapter.

        2.  Discrimination:

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing nay practice made unlawful by this subchapter.

200. Defendants interfered with Plaintiff's rights under the above section and discriminated against Plaintiff by refusing to allow Plaintiff to utilize the leave provided by the Act and instead discharged Plaintiff from employment.

201. Defendants did not satisfy the notice requirements of the FMLA. Accordingly, Defendants interfered with Plaintiff's rights under the FMLA by failing to notify Plaintiff of her rights under the FMLA; including the right to be make use of the afforded leave.

**SIXTH CAUSE OF ACTION**
**DISCRIMINATION UNDER**
**STATE LAW ("NJLAD")**
**(Against All Defendants)**

202. Plaintiff, Amy Cuccio, hereby incorporated all allegations contained in paragraphs one (1) through two-hundred-one (201) as fully as if they were set forth at length.

203. Defendants, The Home Depot USA, Inc. *individually and d/b/a* Home Depot and Home Depot Services, LLC are an employer under the New Jersey Law Against Discrimination ("NJLAD") because they are an entity, origination, and/or corporation. N.J.S.A. 10:5-5(e).

204. Defendant, Kim Vignola is also an employer and/or subject to liability under the NJLAD because she is a person or an individual. N.J.S.A. 10:5-5(a).

205. The NJLAD makes it an unlawful employment practice, among others, for an employer because of race, creed, color, national origin, ancestry, age, marital status, ect. … discrimination against such individual in compensation or in terms, conditions or privileges of employment. N.J.S.A. §10:5-12.

206. Defendants violated the NJLAD by having discriminated against, disparately treated, harassed, created a hostile work environment, and terminated Plaintiff as alleged. *supra.*

207. As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out of pocket expenses, emotional damages, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

208. Defendants' actions were willful and wanton and thus required the imposition of Punitive Damages.

209. Plaintiff seeks payment for costs and reasonable attorney's fees.

210. Alternatively, as Defendants' considered and/or were motivated by wrongful discrimination, Plaintiff is entitled to a charge for mixed-motive discrimination and thus of attorney's fees.

## SEVENTH   CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION
## (against all Defendants)

211. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

212. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or

encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

213.    Defendants violated this section as set forth herein.


## EIGHTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING


214.    Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

215.    New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.   It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:   e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

216.    Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

217.    Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

218.    As such, Plaintiff has been damaged as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: _____

Catherine Smith, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: Catherine@dereksmithlaw.com

DATED: August 20, 2019

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Amy Cuccio 24 Michael Avenue, Milltown, NJ 08850

**DEFENDANTS**

The Home Depot, Inc., at al
1990 Route 9, Howell, NJ 07731

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Catherine Smith  catherine@dereksmithlaw.com
Derek Smith Law Group 2950 Market Street, Suite 2950 19103

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       Another District
       *(specify)*

☐ 6  Multidistrict
       Litigation -
       Transfer

☐ 8  Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #

AMOUNT

APPLYING IFP

JUDGE

MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.